Submitted October 31, 2007, affirmed September 10, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

PAMELA ANN HART,
*Defendant-Appellant.*

Washington County Circuit Court
D055175M; A130811

193 P3d 42

Peter Ozanne, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and Kristin Carveth,

Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Meyers, Attorney General, Mary H. Williams, Solicitor General, and Heather Vogelsong, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Defendant appeals a judgment of conviction for one count of fourth-degree assault. ORS 163.160(1)(a). She argues that the trial court erred in denying her motion for judgment of acquittal on the ground that there is insufficient evidence in the record that the victim sustained any physical injury. Specifically, she contends that the state failed to adduce any evidence that the victim suffered substantial pain or an impairment of his physical condition. We conclude that there is sufficient evidence of impairment of physical condition and therefore affirm.

The facts are undisputed. The victim is defendant's husband. During an argument, defendant pushed the victim, who was intoxicated, in the chest, causing him to fall over backward in the chair in which he was sitting. He hit his head on a windowsill and sustained a cut on the back of his head. Defendant's son called the police. Deputy Humphrey responded to the call. He testified that, when he arrived, the victim was bleeding and was holding a tissue to the wound. He described the wound as "about a half an inch gash" above the hairline. Humphrey called for medical personnel to examine the victim. They advised the victim to go to the hospital, which he declined to do.

Defendant was charged with fourth-degree assault and two counts of harassment, ORS 166.065,[1] and tried in a bench trial. The state's evidence consisted entirely of Humphrey's testimony. After the state rested, defendant moved for judgment of acquittal, arguing that the state had adduced no evidence that the victim suffered substantial pain or an impairment of physical condition and, thus, had not proved any physical injury, as required by ORS 163.160(1)(a). The trial court agreed that there was no evidence of substantial pain, but it concluded that the evidence of the cut on the victim's head constituted evidence of physical impairment, so it denied the motion. After the defense rested, the court convicted defendant.

---

[1] The state dismissed one of the harassment counts before trial, and the court found defendant not guilty of the other count. Those charges are not at issue in this appeal.

On appeal, defendant renews her challenge to the sufficiency of the evidence. The state responds that there is sufficient evidence in the record of both substantial pain and impairment of physical condition, arguing that we can affirm on either of those alternative bases.

■ We review the denial of a motion for judgment of acquittal to determine whether the record contains evidence from which a rational trier of fact, drawing all reasonable inferences in the light most favorable to the state, could find all elements of the charged crime beyond a reasonable doubt. *State v. Simons*, 214 Or App 675, 677, 167 P3d 476 (2007), *rev den*, 344 Or 43 (2008). ORS 163.160(1)(a) provides that a person commits fourth-degree assault if the person intentionally, knowingly, or recklessly causes physical injury to another. ORS 161.015(7), in turn, defines "physical injury" as "impairment of physical condition or substantial pain."

■ At the outset, we decline the state's invitation to affirm on the ground that the record contains evidence of substantial pain. Assuming, without deciding, that a rational factfinder could have determined that the victim suffered substantial pain, we cannot affirm a conviction on the ground that a factfinder *could* have found a particular fact where it is clear that it found that the fact was *not* established. *See State v. Johnson*, 335 Or 511, 523, 73 P3d 282 (2003) ("unless the evidence in a case is such that the trial court as finder of fact could decide a particular factual question in only one way," we are bound by the court's rejection of the evidence); *see also Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (one of the requirements for affirming under the "right for the wrong reason" doctrine is "that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance"). The trial court's statement that there was no evidence of substantial pain was made in the context of ruling on defendant's motion for judgment of acquittal rather than in rendering the verdict, but it is clear that the court found that the state failed to prove substantial pain. It follows that, regardless of the propriety of the trial court's ruling on the motion for judgment of acquittal as to substantial pain, we cannot affirm defendant's conviction on the ground that a factfinder could have found that the victim suffered substantial pain.

We turn to whether there was sufficient evidence of impairment of physical condition. In making their arguments on that issue, the parties rely on the same cases, differing only in how they apply to the facts of this case. Accordingly, we briefly review the holdings of those cases before recounting the parties' arguments.

In *State v. Rice*, 48 Or App 115, 616 P2d 538, *rev den*, 289 Or 741 (1980), the victim received a slight cut on her cheek from flying glass when the defendant broke a window of the automobile in which she was sitting. "She did not realize she had been cut until her daughter mentioned it. She testified she felt no pain, that the cut was not noticeable after two or three days and that there was no scar. She received no medical attention." *Id.* at 117. We held that there was insufficient evidence of physical impairment: "We do not hold that a scratch or scratches can never be considered physical injuries within the meaning of the statute, but we do hold that in this case [the victim's] scratch was so slight that it did not constitute an impairment of her physical condition." *Id.* at 118 (citation omitted).

In *State v. Cetto*, 66 Or App 337, 340, 674 P2d 66, *rev den*, 296 Or 712 (1984), the state adduced evidence that the defendant had slapped the victim, giving him a bloody lip and bruises on his face. We rejected the defendant's argument on appeal that those wounds were not "physical injuries" within the meaning of ORS 163.160(1)(a), and thus affirmed the conviction.

We reached the same conclusion in *State ex rel Juv. Dept. v. Salmon*, 83 Or App 238, 730 P2d 1285 (1986). There, the juvenile offender struck the victim in the face with a plastic container, causing redness and swelling and, several days later, bruising around her eye. We held that the "combination of pain, swelling and bruising constitute[d] a 'physical injury.'" *Id.* at 241-42.

Finally, in *State v. Higgins*, 165 Or App 442, 444, 998 P2d 222 (2000), the defendant shook, scratched, and slapped the victim, leaving red scrape marks on his arm and neck. The victim did not require medical attention and, in fact, was not even aware that the assault had left visible marks on his skin. *Id.* at 447. Examining the text and context

of ORS 161.015(7), we held that "impairment of physical condition means harm to the body that results in a reduction in one's ability to use the body or a bodily organ for less than a protracted period of time." *Id.* at 446-47. We noted that that construction of the statute was consistent with our conclusions in *Rice*, *Cetto*, and *Salmon*, stating that, in *Rice*, "the cut was so slight as to not constitute an impairment of physical condition," whereas in *Cetto* and *Salmon*, the swelling that each victim suffered impaired the ordinary function of or the ability to use the affected body part. *Higgins*, 165 Or App at 447-48. We concluded in *Higgins* that, as in *Rice*, there was no evidence "that the scratches received by [the victim] reduced his ability to use his body." *Id.* at 448.

Defendant argues that this case is like *Rice* and *Higgins*, contending that there is no evidence that the wound on the back of the victim's head caused a reduction in his ability to use his head or any other part of his body for any period of time. She asserts that *Cetto* and *Salmon* are distinguish-[f]able because, as we stated in *Higgins*, a swollen lip impairs the ordinary function of the mouth and swelling around the eye reduces the ability of the victim to use the eye. *See Higgins*, 165 Or App at 448. In defendant's view, unlike the effect of swelling on the eye or lip, a cut on the back of the head does not impair the ability to use the head or any other part of the body.

In response, the state argues, among other things, that the skin is an organ of the body, one function of which is to protect the inner body from infection, and that its protective function is impaired when the skin sustains a laceration of the sort at issue here. Accordingly, the state argues that this case is analogous to *Cetto* and *Salmon*. It contends that *Rice* is distinguishable, pointing out that the scratch on the victim in that case was so slight that the victim, who did not require medical attention, was not initially aware of it and that the scratch was not noticeable after only two or three days, whereas here, the victim was still trying to stop the bleeding when Deputy Humphrey arrived, and medical personnel advised him to go to the hospital.

We agree with the state. Defendant's argument that there is no evidence from which it could be inferred that the

victim's wound impaired his ability to use his head or his body betrays a misunderstanding of the phrase "ability to use the body" in *Higgins*. Defendant reads our construction of ORS 161.015(7) in *Higgins* out of context and, thus, too literally. In *Higgins*, we referred first to the dictionary to aid us in determining the meaning of "impairment of physical condition":

> "Among other things, 'impairment' means 'the act of impairing or the state of being impaired,' *Webster's Third New Int'l Dictionary*, 1132 (unabridged ed 1993); 'physical' means 'of or relating to the body,' *id.* at 1706; 'condition' means 'the physical status of the body as a whole * * * or of one of its parts.' *Id.* at 473. The meaning of 'impairment' is clarified by the definition of 'impair,' which includes 'to make worse: diminish in quantity, value, excellence or strength: do harm to: damage, lessen.' *Id.* at 1131."

*Higgins*, 165 Or App at 446. We further construed the term "impairment of physical condition" by contrasting it to the definition of "serious physical injury" in ORS 161.015(8): "protracted impairment of health or protracted loss or impairment of the function of any bodily organ." *Id.* We stated that the distinction between "physical injury" and "serious physical injury" is that the former "requires less than a 'protracted' loss or impairment to support a conviction." *Id.*

Understood in that context, the ability to "use" one's body refers not only to the ability to put the body into action, as defendant's argument suggests, but also to the ability of the body to function in a normal manner. Indeed, in *Higgins*, we expressly stated that our conclusion in *Cetto* was consistent with our construction of ORS 161.015(7) because a "swollen lip *impairs the ordinary function of a body part*, the mouth." 165 Or App at 448 (emphasis added). Thus, our statement that "impairment of physical condition means harm to the body that results in a reduction in one's ability to use the body or a bodily organ," *id.* at 446-47, should be understood to include not only impairment of voluntary use of a body part, but also of the ordinary *function* of a body part.

As the state points out, one of the functions of the skin is to protect the inner body from infection. That function

ordinarily is not disrupted by minor scratches of the sort inflicted in *Rice* and *Higgins*. However, a factfinder could reasonably infer that a half-inch "gash" for which the victim was advised to go to the hospital does disrupt that function.

Because there was sufficient evidence from which a rational factfinder could find that defendant caused a physical injury within the meaning of ORS 161.015(7), the trial court did not err in denying defendant's motion for judgment of acquittal.

Affirmed.